# United States Court of Appeals
# For the Federal Circuit

---

BLUE SPIKE, LLC

*Plaintiff-Appellee,*

vs.

ADOBE SYSTEMS INCORPORATED

*Defendant-Appellant,*

SOUNDHOUND INC.

*Defendant.*

---

**Appeal from The United States District Court
For The Northern District of California
In Case No. 4:14-CV-1647, Hon. Yvonne Gonzalez Rogers**

---

**BRIEF FOR PLAINTIFF-APPELLEE**

---

Randall T. Garteiser
Christopher A. Honea
Kirk J. Anderson
GARTEISER HONEA, P.C.
44 North San Pedro Rd
San Rafael, California 94903
(415) 785-3762

*Attorneys for Plaintiff-Appellee*

<u>CERTIFICATE OF INTEREST</u>

Counsel for plaintiff-appellant hereby certifies the following:

1.      The full name of every party represented by us is:

Blue Spike, LLC

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

The real parties in interest are named in the caption.

3.      All parent corporations and any publicly held companies that own 10 percent of more of the stock of the party or amicus curiae represented by me are:

No parent corporations or publicly held companies own 10 percent or more of the stock of the party represented by Garteiser Honea, nor does Garteiser Honea represent any amicus curiae.

4.      The name of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are appearing in this Court are:

Randall T. Garteiser
Christopher A. Honea
Kirk J. Anderson
Ian Ramage

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF ISSUES................................................................ 2

STATEMENT OF THE CASE ........................................................... 1

   I.     BACKGROUND TO THE LITIGATION.................................... 2

      A.  Scott Moskowitz and Blue Spike................................... 2

      B.  The Patents-in-Suit.................................................. 3

  II. THE BLUE SPIKE-ADOBE LITIGATION ............................. 4

SUMMARY OF ARGUMENT ...................................................... 11

STANDARDS OF REVIEW ......................................................... 12

ARGUMENT ........................................................................... 14

   I.  THE DISTRICT COURT DID NOT ABUSE ITS
      DISCRETION BY DENYING ADOBE'S REQUEST FOR
      FEES UNDER 35 U.S.C. § 285....................................... 14

      A.  The District Court Correctly Applied the Standard for Fees
         Pursuant to *Octane Fitness*. ...................................... 15

      B.  The District Court Did Not "Flip the Burden."........................... 20

      C.  This Court's Precedent Supports Affirming the District
         Court's Denial of Fees. ............................................ 21

  II. THE DISTRICT COURT CORRECTLY ASSESSED THE
      FACTS WHEN IT DENIED ADOBE'S REQUEST FOR
      FEES PURSUANT TO 35 U.S.C. § 285. ............................... 28

      A.  The District Court Did Not Overlook Its Prior Findings. ........... 28

      B.  Blue Spike's Location in the Eastern District of Texas Is
         Not Exceptional. .................................................. 33

      C.  Blue Spike's Litigation and Settlement History Are Not
         Exceptional. ...................................................... 34

      D.  Blue Spike Did Not Engage in Misconduct................................ 36

 III. THE DISTRICT COURT CORRECTLY DENIED
      ADOBE'S REQUEST FOR FEES UNDER 28 U.S.C. § 1927
      AND THE COURT'S INHERENT POWER. ............................. 37

# TABLE OF AUTHORITIES

## CASES

*Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.*, 393 F.3d 1378 (Fed.Cir.2005) ........................................................ 12

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 2016-1397, 2017 WL 2407853 (Fed. Cir. June 5, 2017) ............................................................ 19

*Eltech Sys. Corp. v. PPG Industries, Inc.*, 903 F.2d 805 (Fed. Cir. 1990) ................................................................................................................ 26

*Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011) .. 14, 18, 22

*Gaymar Industries, Inc. v. Cincinnati Sub-Zero Products, Inc.*, 790 F.3d 1369 (Fed. Cir. 2015) ................................................. 11, 12, 33, 36

*Highmark, Inc. v. Allcare Health Manaement System, Inc.*, 134 S. Ct. 1744 (2014) ................................................................. 1, 12, 13, 15

*Homeland Housewares, LLC v. Sorensen Research and Dev. Trust*, 581 F. App'x 877 (Fed. Cir. 2014) ............................................................ 24

*Insite Vision Inc. v. Sandoz, Inc.*, 783 F.3d 853 (Fed. Cir. 2015) ............... 28

*Large Audience Display Sys., LLC v. Tennman Productions, LLC*, 660 Fed. Appx. 966 (Fed. Cir. 2016) ............................................................ 34

*MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012) ........ 26

*Medtronic Nav., Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943 (Fed. Cir. 2010) ..................................................... 32

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29 (1983) ................................................................................. 17

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014) ......................................................................................... passim

*Oplus Technologies, Ltd. v. Vizio, Inc.*, 782 F.3d 1371 (Fed. Cir. 2015) .................................................................................................... 22, 23

*Raylon LLC v. Complus Data Innnovations, Inc.*, 700 F.3d 1361 (Fed. Cir. 2012) ............................................................................................. 22, 25

*Rothschild Connected Devices Innovations, LLC v. Guardian Protec. Services, Inc.*, 2016-2521, 2017 WL 2407870 (Fed. Cir. June 5, 2017) ...................................................................................................... 28

iv

*SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344 (Fed. Cir. 2015) ........... passim

*Site Update Sols., LLC v. CBS Corp.*, 639 Fed. Appx. 634 (Fed. Cir. 2016) (unpublished) .................................................................... 14, 27, 36

*Site Update Solutions, LLC v. CBS Corp.*, 639 Fed. Appx. 634 (Fed. Cir. 2016) (unpublished). .............................................................. 27, 36

*Wedgetail Ltd. v. Huddleston Deluxe, Inc.*, 576 F.3d 1302 (Fed. Cir. 2009) ................................................................................................ 13

## Statutes

1338(a) .......................................................................................................... 1

28 U.S.C. §§ 1331 ...................................................................................... 1

28 U.S.C. § 1927 ........................................................................... 2, 19, 38

35 U.S.C. § 285 ........................................................................... 2, 1, 12, 14

Federal Circuit Rule 47.5(a) ................................................................... vi

Federal Circuit Rule 47.5(b) ................................................................... vi

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5(a), Plaintiff-Appellee Blue Spike, LLC identifies related case *Blue Spike, LLC v. Adobe Systems Inc.*, No. 2015-1803, which was Blue Spike's appeal of the District Court's judgment on Adobe's declaratory judgment counterclaims of noninfringement. Blue Spike dismissed its appeal on February 3, 2017 before briefs were filed.

Pursuant to Federal Circuit Rule 47.5(b), Blue Spike is unaware of any cases "pending in this or any other court that will directly affect or be directly affected by this court's decision in the appending appeal."

# JURISDICTIONAL STATEMENT

This appeal arises from a decision of the United States District Court for the Northern District of California. The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). On September 18, 2015 the District Court denied Adobe's motion for fees. Adobe incorrectly filed an appeal on April 5, 2017 in Case 15-1803. On April 7, Adobe filed a Motion for Time, seeking the Court's leave to file its Principal Brief late. (Dkt. 24.) The Court rejected Adobe's motion because it sought incorrect relief, but the Court instructed Adobe to file its Principal Brief. Adobe filed its Principal Brief on April 11 (Dkt. 28), which the Court accepted (Dkt. 29).

**STATEMENT OF ISSUES**

Whether the District Court abused its discretion in denying Adobe's request for attorney's fees under 35 U.S.C. § 285, 28 U.S.C. § 1927, or the District Court's inherent sanctioning power.

## STATEMENT OF THE CASE

This is an appeal from the District Court's denial of Defendant Adobe's motion for an award of attorneys' fees against Plaintiff Blue Spike under 35 U.S.C. § 285. That statute provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The Supreme Court has made clear that this is a highly discretionary, totality-of-the-circumstances judgment, *see Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), and that this discretion belongs to the district court, *see Highmark, Inc. v. Allcare Health Manaement System, Inc.*, 134 S. Ct. 1744 (2014). Nothing in the circumstances of this case warrants disturbing the District Court's considered judgment.

At last count, Adobe was seeking $872,103.40 for a case that never progressed beyond the pleadings phase of litigation. Adobe's request for fees is void of any examples of misconduct or misrepresentation; sits in stark contrast to cases where fees were granted; and is on its face an attempt to punish Blue Spike for filing suit against Adobe in the first place. Finding that the District Court abused its discretion when it denied fees would not prevent the gross injustice fees are intended to address. Blue Spike respectfully asks the Court to leave deny Adobe's motion and leave undisturbed the District Court's denial of fees.

# I.    BACKGROUND TO THE LITIGATION

In light of Adobe's aspersions as to Plaintiff's business model and motivations, some background on these matters may be helpful.

## A.    Scott Moskowitz and Blue Spike

Scott Moskowitz is Blue Spike's founder and manager, as well as co-inventor on all of the Patents-in-Suit. (Appx0181, ¶7.) Mr. Moskowitz filed his first digital-content-management patent in 1993 and continues to contribute to the field of digital signal processing and its application to technological problems. (Appx0181, ¶¶10, 20.) Mr. Moskowitz is a prolific inventor and innovator in the digital signal processing space. (Appx0181, ¶8.) One of his early technology patents was innovative enough that the USPTO could not classify it under its existing labeling system, earning the patent an entirely new category: "classification 713, subclass 176, called 'Authentication by digital signature representation or digital watermark'." (Appx0182, ¶12.) And at least one of his patents garnered government interest when the NSA classified the patent under a secrecy order "while it investigated his pioneering innovations and their impact on national security." (Appx0182-183, ¶13.) Mr. Moskowitz has been cited by *The New York Times*, interviewed by *Forbes*, and has testified before the Library of Congress regarding the Digital Millennium Copyright Act. (Appx0183,

¶14.) He is a senior member of the Institute of Electrical and Electronics Engineers (IEEE), a member of the Association for Computing Machinery, and the International Society for Optics and Photonics (SPIE) and has written books since translated into other languages, spoken at conferences, and peer-reviewed numerous conference papers. (Appx0184, ¶16.)

Mr. Moskowitz has applied his digital signal processing knowledge in a number of products, and he and Blue Spike continue "to produce new versions of its popular digital-watermarking tools" including "unique Scrambling technologies" and an "end-to-end solution for music security." (Appx0185, ¶20.) Mr. Moskowitz' technology has "been at the forefront" of industry-based tests such as the MUSE Embedded Signaling Tests and Secure Digital Music Initiative ("SDMI"). (Appx0184, ¶17.) "To this day, Mr. Moskowitz and Blue Spike are working with artists to help them manage and secure their valuable artistic contributions." (Appx0185, ¶20.)

## B.    The Patents-in-Suit.

The Patents-in-Suit teach a novel basis for signal recognition and identification. (Appx0039, 2:4-7; Appx0041, 6:63-66). This "enhanced identification" is carried out by (1) monitoring and analyzing a digital signal (Appx0040, 3:11-49); (2) creating a smaller digital representation known as a signal abstract of that digital signal (Appx0040, 3:13-52); and (3) utilizing

the signal abstract to make comparisons and perform other useful operations (e.g. creating an index-of-relatedness (Appx0094, Claim 11); embedding uniquely identifiable data into a digital signal (Appx0078, Claim 12); identifying related digital signals (Appx0079, Claim 40); and changing selected criteria to effect different results in creating the signal abstract (Appx0047, Claim 5)). These patents have potential applications to a wide variety of applications involving signal identification.

## II. THE BLUE SPIKE-ADOBE LITIGATION

In 2011, Adobe purchased Auditude, Inc. and its technology that "fingerprints everyone and everything." (Appx1371-1372.) After purchasing Auditude, Adobe confirmed it was "very committed to Auditude product lines." (Appx1378.) As part of that commitment, Adobe admitted it possessed Auditude's fingerprinting source code and used it to service Auditude's "legacy" fingerprinting clients for at least two more months. (Appx1504-1505.) Adobe advertised that its Auditude Video Advertising Platform included a "Content ID" which was advertised as "[o]ur patented approach to content identification" in which "ContentID fingerprints all major cable and broadcast channels daily and automatically identifies those shows anywhere across the web." (Appx1368.) Supporting Adobe's advertisement that the accused product implemented Blue Spike's patented

technology, Adobe's Vice President of Advertising Technology, Jeremy Helfand, admitted in his declaration that it continued running "Auditude's digital fingerprinting business" for a short time after acquisition. (Appx0871, ¶9.)

Later, Adobe claimed that all these fingerprinting assets owned by Auditude were purchased by Yahoo! in 2010 and were not a part of Adobe's purchase in 2011. (Appx1120.) Adobe represented to Blue Spike, the District Court, and now this Court that "Adobe never acquired the Auditude digital fingerprinting technology and that the accused products related instead to the separate ad insertion technology and did not employ fingerprinting technology." Adobe Br. at 11; Appx1424, n12 (where Adobe admits it "briefly serviced a few legacy Auditude digital fingerprinting customers"). These representations, however, appear inconsistent with its prior statements. Blue Spike repeatedly insisted Adobe clarify this confusion, but Adobe refused. (Appx1434.) Although the District Court did not chastise Adobe for its misrepresentation, the District Court recognized that Adobe had admitted to servicing legacy customers with fingerprinting technology. (Appx1922.)

On August 22, 2012, Blue Spike filed its original complaint against Adobe's Auditude products in the Eastern District of Texas, alleging

infringement of the '472, '700, '494, and '175 Patents. (Appx0012.) Blue Spike also filed suit against other defendants it believed infringed these patents. Adobe filed a motion to transfer on August 5, 2013, which was granted on March 13, 2014. Other defendants' motions to transfer were denied.

Before Adobe was transferred from the Eastern District of Texas to the Northern District of California, Blue Spike served Adobe with infringement contentions that were similar in many respects to infringement contentions Blue Spike served on other defendants in the Eastern District of Texas. (Appx1118-1121.) One of the defendants Blue Spike served with infringement contentions in Case No. 6:12-cv-499 was Audible Magic. Audible Magic took issue with Blue Spike's use of the phrase "on information and belief," alleged lack of doctrine of equivalence evidence, and grouping of products rather than product-by-product descriptions. These concerns mirrored in part Adobe's concerns. Adobe Br. at 3-4 On January 12, 2015, the Eastern District of Texas Court denied Audible Magic's motion to strike.

After the case against Adobe was transferred to the Northern District of California, the California court held a case management conference, at which the court advised Blue Spike to conform to the local rules.

(Appx1426.) As a sign of good faith, Blue Spike voluntarily reduced the asserted claims from 114 to 40 and began working with Adobe to resolve its concerns over the infringement contentions. (Appx1426.) Blue Spike also filed an amended complaint to include a newly issued patent. (Appx0179.) Blue Spike added the patent as soon as practicable based on the time of its issuance.

Adobe complained of deficiencies in Blue Spike's infringement charts, voicing complaints similar to those that were rejected and struck in the Eastern District of Texas. However, under the stricter rules of the Northern District of California, Blue Spike's charts required revision. On November 21, 2014, Adobe provided Blue Spike with a draft joint letter brief seeking to strike Blue Spike's infringement contentions and demanded Blue Spike return its portion in only one-and-a-half working days. (Appx1623; Appx1427.) Blue Spike responded this was not enough time. (Appx1623; Appx1427.) Blue Spike promised to revise its infringement charts by December 15, 2014 to address Adobe's concerns. (Appx1621-1622; Appx1427.) Adobe acknowledged Blue Spike's proposed December 15th deadline and indicated the need for a three-month extension of its own responsive deadline. (Appx1620-1621.) However, days later, Adobe filed its motion to strike anyway.

At the same time Blue Spike proposed revising its infringement contentions with Adobe, Blue Spike proposed the same plan to Google, a defendant in similar litigation transferred from the Eastern District of Texas to the Northern District of California. In stark contrast to Adobe's decision to file a motion to strike and refuse Blue Spike's offer to revise its contentions, Google agreed to Blue Spike's offer to revise its contentions. Blue Spike satisfied Google's concerns—concerns shared by Adobe—by dropping claims of willfulness, indirect infringement, and direct infringement based on the doctrine of equivalents.

Most of the concerns raised in Adobe's motion to strike were concerns that had been rejected in the Eastern District of Texas or concerns Blue Spike was able to resolve out of court with Google. Unfortunately, Adobe did not inform the District Court about Blue Spike's attempts to resolve the infringement chart dispute out of court, and it granted Adobe's motion, striking Blue Spike's claims of indirect infringement, willful infringement, and direct infringement based on the doctrine of equivalents. Unaware of Adobe's race to the courthouse and Blue Spike's intention to revise its contentions, the District Court suggested Blue Spike had been "the antithesis of diligent."

Blue Spike remained confident that Adobe infringed the Patents-in-

Suit. But Blue Spike was concerned that Adobe's disclosures suggested infringement had occurred for a more limited time than Adobe's advertisements had suggested. Blue Spike remained concerned about Adobe's conflicting statements—sometimes denying and other times admitting possession of the infringing source code and the provision of services to infringing clients—but Blue Spike determined that the cost of litigation outweighed the benefit of vindication. Blue Spike thus filed for dismissal without prejudice. (Appx0650.) Blue Spike had no intention of pursuing the same claims against the same Adobe products, but Blue Spike was also conscious that Adobe might infringe in the future. Adobe opposed Blue Spike's motion and sought dismissal with prejudice. (Appx0659.) The Northern District of California court—still unaware of Blue Spike's prior intent to revise its contentions and Adobe's run to the courthouse—perceived Blue Spike's request for voluntary dismissal as an attempt to avoid amending its infringement contentions. (Appx0706.) The District Court dismissed with prejudice and entered a judgment of noninfringement. (Appx0708.)

Following judgment, Blue Spike filed for appeal, believing the District Court had improperly entered in effect a summary judgment ruling on the pleadings. However, Blue Spike eventually withdrew its appeal,

believing its position was correct but that the cost of appeal was unwarranted when Blue Spike had no intention of further pursuing infringement against Adobe on the same patents against the same products.

After Blue Spike's case was dismissed, Adobe filed a motion for fees. The District Court characterized Adobe's motion as an attempt "to paint a picture of a wholly unreasonable plaintiff attempting to extort a nuisance value settlement while engaging in vexatious and oppressive behavior." (Appx1922) (internal marks omitted). However, the District Court determined "Defendant's attorney argument on this point is insufficient to justify an award of fees under section 285 or as a sanction." (Appx1922.) The District Court was "not convinced that this was an 'exceptional case,' or that counsel acted with 'subjective bad faith.'" (Appx1922.) Recognizing that Adobe's complaint centered on Blue Spike's infringement contentions, the District Court held, "[d]ismissal of plaintiff's claims with prejudice and entry of judgment in favor of defendant was the appropriate outcome stemming from defendant's [sic] failure to remedy its flawed infringement contentions. Nothing more is required." (Appx1922-1923.)

On October 14, 2015, Adobe appealed the District Court's judgment.

## SUMMARY OF ARGUMENT

Every successful defendant thinks they should never have been sued in the first place. And from there it is a short step to see every mistake or insufficiency committed by the plaintiffs as evidence of misconduct and bad motive. But both this Court and the Supreme Court have made clear that "fee awards are not to be used 'as a penalty for failure to win a patent infringement suit.'" *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1372 (Fed. Cir. 2015) (quoting *Octane Fitness*, 134 S. Ct. at 1753). In this case, the District Court found that Blue Spike's conduct of this litigation had been "less than ideal," (Appx1922), and that this failure had appropriately led to the loss of Blue Spike's case. But it rejected Adobe's effort to further punish Blue Spike, stating that "the Court is not convinced that this was an 'exceptional case,' or that counsel acted with 'subjective bad faith.'" *Id.* It thus concluded that "[N]othing more is required." (Appx1923.)

There is no reason to disturb that judgment. The clear thrust of the Supreme Court's recent case law on fee-shifting in patent litigation has been to concentrate primary authority in the hands of the district judge. In *Octane Fitness*, the Court rejected more specific tests for fee-shifting and insisted that the district court be free to make a discretionary judgment based on the totality-of-the-circumstances. *See* 134 S. Ct. at 1756. And in *Highmark*, the

Court held that all aspects of this judgment are reviewable only for abuse of discretion. *See* 134 S. Ct. at 1749. All this makes eminent sense, as the district judge has lived with the case and is plainly best-positioned to make a judgment about the overall strength or weakness of the plaintiff's case and the appropriateness of its litigation tactics—not to mention the plaintiff's motivations for the decisions that it made.

In this case, the District Court has made such an informed judgment. It has been quite critical of Blue Spike in general, and it has found certain of Blue Spike's positions and decisions to be wrong. But it has neither found that Blue Spike's case was exceptionally weak nor that Blue Spike acted in bad faith. There is no ground to find that this considered judgment was an abuse of the District Court's broad discretion.

## STANDARDS OF REVIEW

Section 285 provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "The Supreme Court in *Octane* rejected the two-pronged standard articulated in *Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.,* 393 F.3d 1378 (Fed.Cir.2005), for determining whether a case is exceptional under § 285." *Gaymar Industries, Inc. v. Cincinnati Sub-Zero Products, Inc.,* 790 F.3d 1369, 1372 (Fed. Cir. 2015). "The Supreme Court explained that

'[t]here is no precise rule or formula for making' that determination." *Id.* (citing *Octane,* 134 S.Ct. at 1756). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane*, 134 S.Ct. at 1756. "The inquiry into the objective reasonableness of a party's litigating position may still be relevant under *Octane* because, if a case 'stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated,' it is 'exceptional' under § 285." *Gaymar Industries*, 790 F.3d at 1372.

"[T]he exceptional-case determination is to be reviewed only for abuse of discretion. *Highmark Inc. v. Allcare Health Mgt. System, Inc*., 134 S. Ct. 1744, 1748–49 (2014). Prior to *Octane Fitness*, this Court noted "only a limited universe of circumstances warrant a finding of exceptionality in a patent case: 'inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement.'" *Wedgetail Ltd. v. Huddleston Deluxe, Inc*., 576 F.3d 1302, 1304–05 (Fed. Cir. 2009). "[B]ecause of the substantial economic and reputational impact of an award of attorney fees, we examine the record with care to determine whether the trial court clearly erred in its exceptional case

finding." *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324 (Fed. Cir. 2011). The District Court's perception is afforded great deference considering its closeness to the facts. *Site Update Sols., LLC v. CBS Corp.*, 639 Fed. Appx. 634, 637 (Fed. Cir. 2016) (unpublished) (denying fees pursuant to § 285 post-*Octane*) ("Although reasonable minds may differ, the district court ruled from a position of great familiarity with the case and the conduct of the parties, and it determined that Site Update's tactical blunders and mistakes do not warrant fees under 35 U.S.C. § 285."). "Importantly, this means that we need not rule on the *correctness* of the district court's decision on all underlying issues of law in reviewing a district court's exceptional case determination." *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015). "We need only determine whether the district court abused its discretion when it found that the party's litigating position was not so merit-less as to "stand out" from the norm and, thus, be exceptional." *Id.*

## ARGUMENT

## I.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DENYING ADOBE'S REQUEST FOR FEES UNDER 35 U.S.C. § 285.

The Supreme Court's recent decision in *Highmark, Inc. v. Allcare Health Management System, Inc.*, 134 s. Ct. 1744 (2014), stressed the

primary role of the district judge under § 285. "[T]he text of the statute 'emphasizes the fact that the determination is for the district court,'" the Court said. *Id.* at 1748. "'As a matter of sound administration of justice,' the district court 'is better positioned' to decide whether a case is exceptional . . . because it lives with the case over a prolonged period of time." *Id.* In this case, the District Court had by far the best vantage to evaluate Blue Spike's case and its conduct of the litigation. Judge Rogers lived with the case since it was transferred to the Northern District of California; she was aware—and often critical—of all the aspects of Blue Spike's conduct that Adobe cites. But at the end of the day, her all-things-considered assessment was that this case is *not* sufficiently exceptional to warrant a fee award. Adobe has offered no adequate reason to disturb that judgment.

**A.    The District Court Correctly Applied the Standard for Fees Pursuant to *Octane Fitness*.**

Adobe seeks to avoid the abuse of discretion standard by imputing an implicit legal error. It reasons backward from the outcome of its fee motion: The claim seems to be that since Adobe lost, the District Judge *must* have applied the wrong standard. But Judge Rogers cited *Octane Fitness*—which all agree to provide the governing rule—no less than four times in her discussion of the governing legal standard. (Appx1921.) She simply did not find that standard satisfied in this case.

Specifically, the District Court followed *Octane Fitness'* guidance that "the substantive strength of a party's litigating position" may provide insight as to whether fees are appropriate. *See* 134 S. Ct. at 1756. As the District Court noted, Adobe "seeks to paint a picture of a wholly unreasonable plaintiff attempting to extort nuisance value settlement while engaging in vexatious and oppressive behavior designed to increase Adobe's legal expenses." (Appx1922.) This account was based "in large part" on Adobe's "contention that it had acquired Auditude in November 2011, after that company's potentially infringing products had been spun-off into a new entity, IntoNow, which was ultimately sold to third-party Yahoo Inc." *Id*. But the District Court observed that "Defendant, however, apparently concedes there was at least a colorable basis for an infringement case against it, as it 'briefly serviced a few legacy Auditude digital fingerprinting customers as an IntoNow licensee before permanently shutting down the fingerprinting services in January 2012—months before this action was filed.'" *Id*. Given these facts, the District Court found that Blue Spike's litigation position was *not* exceptionally weak; indeed, it could not "determine at this time . . . whether any of the specific products identified would have arguably fallen within the scope of the claims." *Id*. This whole analysis was firmly and appropriately rooted in the post-*Octane Fitness* law.

Nor is there any evidence that the District Court "actually applied the now defunct *Brooks Furniture* framework in denying Adobe's request for attorney's fees." Adobe Br. at 35. Judge Rogers did not cite *Brooks Furniture*, nor did she indicate that she thought her discretion bound by the more rigid analysis that decision employed. Adobe's argument chiefly emphasizes the district court's election not to discuss each of Adobe's particular contentions in its opinion denying fees. *See* Adobe Br. at 35 (complaining that the District Court "impermissibly failed to address most of the circumstances raised in Adobe's Motion"). But the District Court was not obligated to mention each of Adobe's positions specifically—especially when those positions essentially distil to the single argument that Blue Spike's infringement contentions were inadequate. This is not administrative law. The District Court did not have the same obligation to demonstrate its consideration of all potentially relevant factors that a federal agency would have. *Cf. Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (discussing "hard look" review). It is enough that the District Court identified those aspects of the case that it considered most important and explained why they did not establish that the case was "exceptional" under § 285.

In particular, Adobe expressed frustration that the District Court did not spend time discussing Adobe's position that "Blue Spike failed to conduct an adequate pre-filing investigation." Adobe Br. at 35. But this claim goes to a disputed question about Adobe's transition from fingerprinting to ad insertion technologies. The District Court noted Adobe provided nothing more than attorney argument to justify this position on this matter, and it rightly held that "Defendant's attorney argument on this point is insufficient to justify an award of fees under section 285 or as a sanction." (Appx1922.)[1]

In any event, the District Court made clear that it *did* consider the totality of Blue Spike's litigation conduct. Near the end of its discussion, Judge Rogers noted that "plaintiff's conduct was less than ideal throughout

_____

[1] In fact, the District Court's ruling was consistent with this Court's precedent that a District Court cannot make a determination on whether a pre-filing investigation is adequate when a case is dismissed before claim construction. *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1319 (Fed. Cir. 2011); ("Without a full claim construction analysis, including a consideration of Eon–Net's claim construction arguments, we held that it was impossible to determine if Eon–Net's claim construction and infringement positions were without merit.").

the litigation and, in particular, as it drew to a close." *Id*. Adobe's trouble is that the District Court simply drew a different conclusion than Adobe does about the appropriate result: "[T]he Court is not convinced that this was an 'exceptional case,' or that counsel acted with 'subjective bad faith.'" *Id*. In other words, the District Court considered Adobe's arguments, but those arguments simply did not persuade it to award attorneys' fees.

Adobe also emphasizes the District Court's use of the term "subjective bad faith" as somehow indicating an erroneous standard. *See* Appx1922; Adobe Br. at 35 ("This type of rigid inquiry, focused only on objective baselessness of non-infringement and a throwaway 'analysis' of subjective bad faith is an application of the more stringent *Brooks Furniture* standard.") (emphasis added). But as Adobe knows, "subjective bad faith" is required by 28 U.S.C. § 1927, under which Adobe also sought fees. *See* Appx1921 (noting this). And this Court has stated that, under § 285, the "exercise of discretion in favor of awarding attorney fees should be bottomed upon a finding of unfairness or *bad faith* in the conduct of the losing party, or some other equitable consideration of similar force." *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 2016-1397, 2017 WL 2407853, at *4 (Fed. Cir. June 5, 2017) (emphasis added). *Octane Fitness* similarly emphasized bad faith as a guidepost for awarding fees. *See* 134 S.Ct. at 1753

(noting that "[§ 285] enabled [district courts] to address 'unfairness or bad faith in the conduct of the losing part'").

The mere fact that the District Court considered factors it might have also considered under *Brooks Furniture* hardly establishes legal error. Indeed, this Court has counseled lower courts that "under *Octane Fitness*, the district court must consider whether the case was litigated in an unreasonable manner and . . . district courts can turn to our pre-*Octane Fitness* case law for guidance." *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1349 (Fed. Cir. 2015) (affirming the district court's denial of fees under § 285).

## B. The District Court Did Not "Flip the Burden."

Adobe argues that the District Court erred by "flipping the burden of proof onto Adobe by questioning whether Adobe had affirmatively proven non-infringement." Adobe Br. at 37.[2] The basic mistake underlying this complaint is that the District Court was not adjudicating the merits of this case; rather, it was deciding whether this case was sufficiently "exceptional" to award fees. These are two separate inquiries altogether. It was Adobe's

---

[2] *See also* Adobe Br. at 38 ("[A]nd it was particularly inappropriate to flip the burden of proof onto Adobe at this point in the litigation [to prove noninfringement].").

burden to show that Blue Spike's infringement position was so indefensible that the case should be considered exceptional. The inquiry substantively overlaps with the merits because the soundness of Blue Spike's litigating position is relevant under § 285. But the District Court in no way reopened its merits rulings when ruling on Adobe's fee petition—much less did it "flip the burden" applicable to those rulings.[3]

To the extent Adobe believes it should be awarded fees because it prevailed on its noninfringement counterclaims, that position is a nonstarter. The Supreme Court "has cautioned that fee awards are not to be used 'as a penalty for failure to win a patent infringement suit.'" *Octane Fitness*, 134 S.Ct. at 1753.

### C. This Court's Precedent Supports Affirming the District Court's Denial of Fees.

Because the course of each litigation is different, Adobe's citation to precedent cannot answer the all-things-considered question that confronted the District Court in ruling under § 285. The cases Adobe cites, however, do highlight the differences between this case and those in which fees have

_____

[3] For the same reason, Adobe's argument that "[i]t was legal error for the District Court to use Adobe's fees motion as an opportunity to revisit the question of whether non-infringement had been proven" is beside the point. Adobe Br. at 38.

been awarded and upheld. Equally important, in none of these cases did this Court overrule a district court's application of the *Octane Fitness* standard.[4] If anything, these cases demonstrate the deference to which district courts are entitled under § 285.

Adobe relies on *Eon-Net LP v. Flagstar Bancorp,* 653 F.3d 1314, 1328 (Fed. Cir. 2011), in which this Court upheld an award of fees by the district court. Adobe Br. at 52. The "hallmarks" of the *Eon-Net* case were destruction of documents and intentionally not "implement[ing] a document retention plan," 653 F.3d at 1324; "fail[ing] to engage the claim construction process in good faith because Eon–Net failed to offer a construction for any disputed claim terms, lodged incomplete and misleading extrinsic evidence with the court, and submitted declarations that contradicted earlier deposition testimony by the declarants," *id.* at 1325; a "cavalier attitude" such as an interrogatory response which snidely stated that "the skill in the

---

[4] The only cases cited in which this Court reversed a denial of fees rested on and did not apply *Octane Fitness*. *Oplus Technologies, Ltd. v. Vizio, Inc.*, 782 F.3d 1371 (Fed. Cir. 2015), involved a district court order issued *prior* to *Octane Fitness* that therefore applied the wrong legal standard. *See id.* at 1374. *Raylon LLC v. Complus Data Innnovations, Inc.*, 700 F.3d 1361 (Fed. Cir. 2012), is a pre-*Octane Fitness* (and pre-*Highmark*) case that rested on the Rule 11 standard as applied to claim construction, not § 285. *See id.* at 1370-71.

art required is that sufficient to converse meaningfully with Mitchell Medina," *id.* at 1325. Adobe does not even accuse Blue Spike of similar "hallmarks" of bad faith litigation.

Indeed, this Court affirmed denial of fees in *SFA Systems* with arguments mirroring Adobe's: "SFA's dismissal of this case, the existence of other lawsuits by SFA, and its previous settlement amounts" *See SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1351 (Fed. Cir. 2015). This Court held "we cannot conclude that the district court abused its discretion in finding that this case did not stand out from others with respect to the unreasonable manner in which the case was litigated." *Id.* (citing *Octane Fitness*, 134 S.Ct. at 1756) (internal marks omitted). This Court then indicated two true hallmarks of exceptional cases, hallmarks not present nor alleged here: "Notably, the district court did not find any evidence of misrepresentation or misleading statements by SFA during the course of this litigation." 793 F.3d at 1351–52. The Court then contrasted the lack of misrepresentation or misleading statements to cases such as *Eon-Net*, *Monolithic Power*, and *MarcTec*, all cited by Adobe as support for its request for fees. *See id.* at 1352.

Similarly, Adobe is wrong to compare this case to *Oplus Technologies, Ltd. v. Vizio, Inc.*, 782 F. 3d 1371 (Fed. Cir. 2015). *See* Adobe

Br. at 39. There, the plaintiff (1) "strategically amend[ed] its claims to manufacture venue," (2) "provided only the most tenuous basis in its initial complaint for bringing suit in Illinois," (3) "took its first step over the boundaries of professionalism" when its amended complaint "rendered its allegations against Sears prima facie inadequate," (4) "ignor[ed] necessary discovery," (5) "used improper litigation tactics including presenting contradictory expert evidence and infringement contentions," (6) "misrepresenting legal and factual support," (7) "attempt[ing] to mislead the court," (8) and finally, of "greatest concern … was [plaintiff's] counsel's subpoena for documents counsel had accessed under a prior protective order." 782 F.3d at 1373. This laundry list of misconduct highlights what makes a case exceptional, and it contrasts starkly with the facts of the case at hand. Moreover, *Oplus* involved a suit that had proceeded far beyond the infringement contention stage to summary judgment, discovery, expert reports, and similar advanced proceedings. Here, Blue Spike and Adobe were only at the initial pleading stage, pre-discovery.

Adobe compares the present case to *Homeland Housewares, LLC v. Sorensen Research and Dev. Trust,* 581 F. App'x 877, 879-80 (Fed. Cir. 2014), on the ground that both involved "repeated failures to introduce admissible evidence of infringement." Adobe Br. at 46. However, *Homeland*

*Housewares* is distinguishable because the plaintiff failed to provide evidence of infringement "after more than a year of opportunities to take discovery." *Id.* at 881. Here, by contrast, Blue Spike's burden was to produce a colorable claim of infringement. The District Court found that it did. Blue Spike needed to provide notice. It did. *Homeland Housewares*, once again, involves a case that had proceeded much further than this one.

*Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1370-71 (Fed. Cir. 2012), is similarly distinguishable. *Contra* Adobe Br. at 46. In *Raylon*, this Court vacated and remanded the District Court's pre-*Octane* decision not to sanction the plaintiff under Rule 11, finding that "there is a threshold below which a claim construction is so unreasonable that no reasonable litigant could believe it would succeed," and the plaintiff fell below that threshold. 700 F.3d at 1368 (quotations omitted). Because the district court's denial of fees had depended entirely on its erroneous Rule 11 conclusion, this Court remanded the case to consider the totality of the circumstances under § 285. This Court did not hold, then, that fees were warranted. In any event, in this case Adobe advertised the infringing technology and admitted it had it in its possession for a certain period of time. The District Court agreed this was colorable evidence of infringement.

Moreover, *Raylon* had proceeded all the way to claim construction, in contrast to the present case. Similarly, in *Eltech Sys. Corp. v. PPG Industries, Inc.*, 903 F.2d 805, 807 (Fed. Cir. 1990), the District Court found the case exceptional after plaintiff's "total lack of evidence" *at trial*, after claim construction and discovery. *See* Adobe Br. at 46 (citing *Eltech*). It is far less reasonable, as Judge Rogers may well have recognized, to impose fees when the plaintiff has not had such an extended opportunity to develop its case.

Finally, in *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 920 (Fed. Cir. 2012), the Court affirmed an award for fees for two primary reasons: the Plaintiff "(1) misrepresented both the law of claim construction and the constructions ultimately adopted by the court; and (2) introduced and relied on expert testimony that failed to meet even minimal standards of reliability, thereby prolonging the litigation and the expenses attendant thereto." *See* Adobe Br. at 47 (citing *MarcTec*). Once again, that case involved a plaintiff prolonging litigation *through claim construction*, this time coupled with misrepresentations and atrocious expert testimony. *See* 664 F.3d at 920 (observing that "exclusion of expert testimony under Daubert does not automatically trigger a finding of litigation misconduct, and in most cases likely would not do so, [but] we find that the

circumstances of this case were sufficiently egregious to support an award of attorney fees").

As the cases just surveyed suggest, fee awards have generally occurred in cases involving much more serious conduct. More fundamentally, the pattern of these cases generally involves deference by this Court to the district court's exercise of discretion.

This Court recently applied *Octane Fitness* and *Highmark* in *Site Update Solutions, LLC v. CBS Corp.*, 639 Fed. Appx. 634 (Fed. Cir. 2016) (unpublished). Noting that district courts rule "from a position of great familiarity with the case and the conduct of the parties," this Court affirmed the district court's conclusion that the plaintiff's "tactical blunders and mistakes do not warrant fees under 35 U.S.C. § 285." *Id.* at 637. Summarizing the standard of review, the Court said that "because we do not believe that the district court based its ruling on an erroneous view of the law and we are not left with a definite and firm conviction that the district court erred in its assessment of the evidence or otherwise abused its discretion, we cannot say that the district court erred." *Id.* This case warrants a similar conclusion.

## II.   THE DISTRICT COURT CORRECTLY ASSESSED THE FACTS WHEN IT DENIED ADOBE'S REQUEST FOR FEES PURSUANT TO 35 U.S.C. § 285.

The District Court did not make any factual findings that would leave this Court "with the definite and firm conviction that a mistake has been made." *See*, *Rothschild Connected Devices Innovations, LLC v. Guardian Protec. Services, Inc.*, 2016-2521, 2017 WL 2407870, at *2 (Fed. Cir. June 5, 2017) (citing *Insite Vision Inc. v. Sandoz, Inc.*, 783 F.3d 853, 858 (Fed. Cir. 2015)).  It thus appropriately concluded that no additional sanctions—beyond the loss of the litigation—were appropriate in this case.

### A.   The District Court Did Not Overlook Its Prior Findings.

Adobe faults the District Court for not specifically mentioning certain phrases in its order. Adobe Br. at 30 ("[T]he District Court did not address its own findings that Blue Spike and its counsel litigated in such an unreasonable manner that their actions 'suggest bad faith,' were 'the antithesis of diligent' and were marked by a 'disregard for the local rules' and 'gamesmanship.'). But the District Court's use of these terms at various points in the litigation does not somehow estop the Court from finding, as an all-things-considered judgment, that fees are unwarranted in this case.

First, in its order on Blue Spike's request for dismissal, the District Court referred to Blue Spike's conduct at one point as the "antithesis of

diligent." (Appx0706.) The Court's assessment was based on its perception that Blue Spike had not diligently attempted to revise its infringement contentions. As noted above, the Court was unaware that Blue Spike had successfully done so in another case against Google, that Blue Spike was cooperating with Adobe to do the same, and that Adobe rushed to the courthouse to file a motion to strike. The District Court said,

> The plaintiff failed to serve proper infringement contentions in a case that it filed back in August of 2012 and that was transferred to this district more than a year ago. The plaintiff also failed to move for voluntary dismissal in a timely fashion once it became apparent that it would be unable to serve sufficient infringement contentions. Finally, the plaintiff has failed to provide a sufficient explanation for the basis for its request.

(Appx0706.) Blue Spike regrets that it did not provide the District Court a fuller explanation of its timing on seeking dismissal and its attempt to coordinate with Adobe to revise its infringement contentions. But the District Court recognized that what it saw as a lack of diligence from Blue Spike fell far short of being "exceptional," and accordingly denied Adobe's request for fees. (Appx1922-1923.)

Second, Blue Spike submitted amended infringement contentions to the Court that that reduced the number of accused products to a single product. The District Court noted that in determining whether amended

infringement contentions will accepted, courts in the Northern District of California assess "whether the request to amend is motivated by gamesmanship." (Appx0641, n4). Unaware of Blue Spike's attempt to resolve Adobe's concerns out of court, the District Court said, "[a]lthough, under the circumstances presented here, it appears that Blue Spike's continued delay and refusal to amend its ICs was, *perhaps, motivated by gamesmanship*, the requested amendment nonetheless fulfills the purpose of the Local Rules by reducing the number of Accused Products." *Id.* (emphasis added). The Court did *not* find—contrary to Adobe's repeated suggestion—that Blue Spike had in fact been motivated by gamesmanship, and it raised the question only in connection with the relevant rule regarding amending infringement contentions.

Finally, in its order ruling on Adobe's counterclaims of noninfringement, the District Court took issue with one of Blue Spike's arguments and said, "this argument suggests bad faith by the plaintiff either now or at the outset of the case." (Appx0733.) The District Court said Blue Spike's position was that "defendant's counterclaims for non-infringement are impermissibly broad." (Appx0733.) What Blue Spike actually said is as follows:

> Even if the Court wanted to rule in favor of
> Adobe's counterclaims of no infringement, Adobe

does not provide sufficient detail to allow the Court to do so. In fact, to allow such relief to a defendant that has said to Blue Spike – ["Auditude] sold the accused functionality to Adobe and then to the Court indicate [Adobe] has no idea what infringed would be severely prejudicial to a Plaintiff, like Blue Spike, denied any discovery in this litigation.

(Appx0712.)

It appears the District Court found Blue Spike's position hypocritical—as if Blue Spike believed it could assert broad claims of infringement but that Adobe could not assert broad claims of nonfringement—but there is no hypocrisy here. On the contrary, what Blue Spike said here would also apply to its own infringement claims— essentially, that there remained insufficient evidence to prove either infringement or noninfringement, not because neither could be proved eventually, but because there had been no claim construction and insufficient discovery had been conducted. Blue Spike's infringement contentions served a purpose of putting Adobe on notice of its infringement, not providing infringement analysis worthy of summary judgment of infringement. Similarly, ruling on Adobe's claims of noninfringement was premature because the case had not proceeded through claim construction and discovery had not been conducted; noninfringement *could not be proved* on

the pleadings when, as here, Blue Spike presented a "colorable basis for an infringement case."

Blue Spike believes the District Court erred in finding of noninfringement,[5] and that on this argument in question, the District Court's misunderstanding of Blue Spike's argument resulted in an unfortunate, mischaracterization of that argument as potentially raised in bad faith.[6] Nevertheless, the District Court only said the single argument "suggests bad faith" and was fully aware of that potential implication when it ultimately found Blue Spike had not evidenced "subjective bad faith." (Appx1922.) And even if the District Court had unequivocally held that Blue Spike's argument was raised in bad faith—which the District Court clearly did not do—a single instance of bad faith would not be sufficient to determine that a plaintiff has acted in bad faith throughout litigation as required.[7] Ultimately,

_____

[5] Blue Spike initially filed an appeal on the District Court's finding of noninfringement for this very reason. However, since Blue Spike had no intention of asserting the same patents-in-suit against the same Adobe products, Blue Spike reluctantly withdrew its appeal.

[6] Blue Spike does not suggest in any way that the District Court intentionally mischaracterized Blue Spike's argument. Rather, Blue Spike believes the District Court did not understand Blue Spike's position, and that the misunderstanding resulted in a mischaracterization.

[7] *See*, *Medtronic Nav., Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 965 (Fed. Cir. 2010) (vacating and reversing an award

the District Court remained fully aware of these comments and nevertheless determined it "is not convinced that this was an 'exceptional' case." (Appx1922.) The District Court determined fees were not appropriate, and that decision should not be disturbed.

## B. Blue Spike's Location in the Eastern District of Texas Is Not Exceptional.

Adobe takes aim at Blue Spike's formation in the Eastern District of Texas as somehow indicating this case is exceptional. (*See,* Adobe Br. at 8.) This is not true. Blue Spike has been an active participant in the Eastern District of Texas. For instance, Blue Spike is a member of the Tyler Chamber of Commerce and its CEO is a member of the Greater East Texas IT Professionals. Blue Spike has also sponsored the Tyler Mini Maker Faire.[8]

---

of fees; "[T]hat single incident, viewed in context, is not sufficient to support the district court's finding that this case is 'exceptional,' and it is plainly insufficient to support the broad attorney fee award that the district court entered in this case."); *Gaymar Industries, Inc. v. Cincinnati Sub-Zero Products, Inc.*, 790 F.3d 1369, 1377 (Fed. Cir. 2015) (noting, in denying fees under § 285, that "other circuits have concluded that isolated overstatements do not rise to the level of sanctionable litigation misconduct under Federal Rule of Civil Procedure 11").

[8] *See*, http://tyler.makerfaire.com/sponsors/.

Moreover, this Court recently vacated a fee award as "clearly erroneous" when a district court held that a plaintiff was "an apparent shell corporation" and "seems to have been formed with the sole intent to create jurisdiction in the Eastern District of Texas." *Large Audience Display Sys., LLC v. Tennman Productions, LLC*, 660 Fed. Appx. 966, 971 (Fed. Cir. 2016) (unpublished). This Court noted that "while the location of [the plaintiff] might have been relevant to a request for a change of venue under 28 U.S.C § 1404, the formation of [the plaintiff] in Texas would not affect whether the Eastern District of Texas could assert jurisdiction over Appellees." *Id.* Blue Spike's choice to reside in this district does not make this case exceptional.

### C. Blue Spike's Litigation and Settlement History Are Not Exceptional.

Blue Spike's litigation and settlement history are not exceptional. Adobe criticizes Blue Spike for the number of cases it has filed. But Blue Spike has over 100 patents to its name, every one of which lists as an inventor or co-inventor Blue Spike's manager, Scott Moskowitz. The digital fingerprinting and watermarking technology Blue Spike invented has become extremely popular in recent years, and unfortunately for Blue Spike and other inventors these days, it is all too common for large companies to forego proper freedom to operate analyses in favor of disparaging inventors

who assert their rights. Given this anti-inventor climate, Blue Spike has dramatically reduced the number of cases it files.

In terms of settlements, Adobe's disparaging characterization of Blue Spike's settlements is incorrect and wholly improper. Adobe says that after a review of Blue Spike's settlements, "the settlements that Adobe is aware of have been for substantially less than the cost of litigation." Adobe Br. at 53 (citing Appx0781-0782 ¶ 28). Settlements that Blue Spike shared with Adobe were shared under a nondisclosure agreement, which Adobe violated in making this pronouncement. Moreover, that nondisclosure agreement is at least as important to the companies that have settled with Blue Spike as it is to Blue Spike itself. While it is true that Adobe's settlement references could be more specific, they are specific enough to be in violation of Adobe's agreement.

Further complicating the settlement issue, Adobe is misrepresenting the facts, and Adobe knows Blue Spike will not breach its duty to its licensees by disclosing numbers to prove its position. The fact remains that Blue Spike's settlements are varied. Blue Spike has settled for large sums; Blue Spike has settled for modest sums when infringement was limited or companies were small; and Blue Spike has settled for zero sums and mere agreements not to infringe when companies were small enough to warrant

this type of arrangement. Importantly, even if Adobe's assertion were true, it would be Adobe's burden to show Blue Spike's settlements were motivated by bad faith. *See*, *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015) ("The problem with Newegg's request that we reverse the district court's exceptional case determination on these grounds, however, is its failure to make a record supporting its characterization of SFA's improper motivations."); *Site Update Sols., LLC v. CBS Corp.*, 639 Fed. Appx. 634, 636 (Fed. Cir. 2016) (unpublished) (affirming denial of fees despite argument plaintiff had a "practice of extracting nuisance value settlements"). Adobe cannot show that Blue Spike settlements were motivated in bad faith.

### D.     Blue Spike Did Not Engage in Misconduct.

Adobe repeatedly refers to Blue Spike's behavior as misconduct, a very serious accusation. "In view of the serious consequences of a finding of misconduct, it is important that the district court be particularly careful not to characterize bad lawyering as misconduct." *Gaymar Industries, Inc. v. Cincinnati Sub-Zero Products, Inc.*, 790 F.3d 1369, 1377 (Fed. Cir. 2015). Here, the District Court never used the term.

This Court has put misconduct on par with misrepresentation. *Id.* ("While such sloppiness on the part of litigants is unfortunately all too common, it does not amount to misrepresentation or misconduct."). In fact,

in all the myriad forms Adobe's basic complaint about infringement contentions has taken, Adobe does not accuse Blue Spike of misrepresentation. By contrast, Adobe continues to misrepresent whether it provided services to Auditude customers and possessed Auditude source code. And Adobe is misrepresenting to this Court the state of Blue Spike's settlement figures, knowing that Blue Spike will not attempt to disprove that untruth by breaking agreements with its licensees.

## III. THE DISTRICT COURT CORRECTLY DENIED ADOBE'S REQUEST FOR FEES UNDER 28 U.S.C. § 1927 AND THE COURT'S INHERENT POWER.

In addition to seeking fees under § 285, Adobe also makes passing reference to § 1927 and the court's inherent power. For the same reasons fees are not appropriate under § 285, they are not appropriate under these alternatives. Adobe argues Blue Spike "vexatiously prolonged and multiplied this litigation" even after Adobe informed Blue Spike "that the Auditude digital fingerprinting technology belonged to Yahoo, not Adobe." Adobe Br. at 55. But as already discussed, Adobe also informed Blue Spike that it *did* in fact offer services to infringing customers for a short period of time, an issue Adobe refused to address or resolve. Moreover, Blue Spike did not prolong litigation; it dismissed the case *while it was still in the pleadings stage*.

Adobe mischaracterizes the District Court's warning that what it perceived as a hypocritical statement by Blue Spike suggested bad faith. Adobe magnifies and twists that highly contextual situation to say that "[d]uring the course of litigation, the District Court recognized that such *tactics* "suggest bad faith" and that the litigation has a whole "has been marked by a 'disregard for the local rules' and 'gamesmanship.'" Adobe Br. at 57. These overstatements mischaracterize the truth behind the District Court's positions.

Both § 1927 and the court's inherent power to sanction require a finding of bad faith. The District Court found no bad faith, and there is no reason to hold that the District Court so clearly misunderstood the facts that it would leave this Court with a definite and firm conviction that a mistake has been made. Thus, the Court should affirm the District Court's denial of fees pursuant to § 1927 and the court's inherent power.

## CONCLUSION

The District Court's decision denying fees should be affirmed.

Dated: January 26, 2017                    Respectfully submitted,

By: /s/ Randall T. Garteiser

Randall T. Garteiser
Christopher A. Honea
Kirk J. Anderson

GARTEISER HONEA, P.C.
44 North San Pedro Rd
San Rafael, California 94903
(415) 785-3762

*Attorneys for Plaintiff-Appellant*
Blue Spike, LLC

## CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25 and Fed. Cir. R. 25, I certify that on this day I served the foregoing via the Court's CM/ECF on the principal attorneys for each party.

Dated: June 26, 2017 /s/ Randall T. Garteiser
Randall T. Garteiser

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that the body of this brief, beginning with the Jurisdictional Statement on page 1 and ending with the last line of the conclusion on page 38, including, headings, footnotes, and quotations, contains 9348 words, in compliance with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i).

Dated: June 26, 2017 Respectfully submitted,
By: /s/ Randall T. Garteiser

Randall T. Garteiser
 *Counsel of Record*
Christopher A. Honea
GARTEISER HONEA, P.C.
44 North San Pedro Rd
San Rafael, California 94903
(415) 785-3762

*Attorneys for Plaintiff-Appellant*
Blue Spike, LLC